Charles G. Carluccio, complainant-appellant,

*v.*

Arthur E. Winter and Katharine Humes Winter, defendants-respondents.

[Argued Ocober 31st, 1930. Decided April 17th, 1931.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Bigelow, who delivered the following opinion:

"The late Vice-Chancellor Bentley heard this case and filed a memorandum setting forth his opinion. Thereafter, the case was reargued before him and remained undecided at the time of his death.

"The bill was filed September 18th, 1928, to set aside a conveyance of real estate in Orange made by Arthur E. Winter to his wife, Katharine H. Winter, September 11th, 1920, on the ground that the conveyance was made without consideration in order to delay, hinder and defraud Mr. Winter's creditors.

"Complainant is a judgment creditor, having recovered judgment in the New Jersey Supreme Court against Mr. Winter, July 20th, 1927, for $251,782.93.

"The transactions out of which this judgment arose began in the spring of 1920. Mr. Winter, at that time, was a member of the firm of Winter, Ross & Company, importers. On May 28th, 1920, this firm agreed to sell to Muller-Fox Brokerage Company, of Chicago, a large quantity of sugar, to be shipped from Java and to be paid for upon presentation of shipping documents in New York. Payment pursuant to the contract was made before the purchasers had an opportunity to examine the sugar. Thereafter, early in September, the sugar arrived in New York and the purchasers began examination of it. On September 8th, 1920, they telegraphed Winter, Ross & Company that they had just received a sample of the sugar and that it was not of the quality specified in the contract and that upon arrival of the sugar at the warehouse they would have other samples drawn.

"On October 1st they wrote Mr. Winter's firm that two thousand four hundred bags, or about half the sugar, was of inferior quality, and that they would hold these two thousand four hundred bags subject to the seller's orders. Shortly thereafter the purchasers elected to rescind the entire sale, and on October 19th, 1920, began an action for the recovery of the purchase price in the New York supreme court. Judgment in this action was recovered January 23d, 1924, and was assigned to the plaintiff. On this judgment he recovered the judgment above mentioned in the New Jersey supreme court.

"Complainant's assignor was a creditor of Mr. Winter at the time of the conveyance of the real estate in controversy. *Uniform Fraudulent Conveyance act of 1919 § 1; Washington National Bank v. Beatty, 77 N. J. Eq. 252; Conway v. Raphel, 102 N. J. Eq. 531.*

"There is no evidence of any express fraud in the making of this conveyance. If the complainant is entitled to relief, it must be because no fair or adequate consideration was paid. The defendants maintain that the consideration was $25,000, an amount which is conceded to be ample. $10,000 of this consideration was satisfied by the execution of a purchase-money mortgage. About three months later this mortgage was paid off by the proceeds of a new mortgage in the same sum given to Mrs. Winter's brother. His check for $10,000 was then endorsed by Mrs. Winter to her husband and re-endorsed by the latter to Winter, Ross & Company, and deposited in their account.

"Five thousand dollars of the consideration, according to the testimony of Mr. and Mrs. Winter, was paid in several installments after the execution of the deed. They produced as evidence of the final payment a canceled check for $456.15, dated December 6th, 1920, drawn by Mrs. Winter to the order of her husband and deposited to the credit of Winter, Ross & Company. Beyond this, there is no corroboration of their testimony as to the payment of this $5,000. But this failure by defendants to prove satisfactorily this item of the consideration is not sufficient ground for setting the conveyance aside, since payment of $30,000 for the property is established.

"On September 1st, 1920, eleven days before the execution of the deed, Mr. Winter borrowed from his stock brokers $20,000 on the security of shares of corporate stock standing in his wife's name. These securities, the defendants testified, were lent to him by Mrs. Winter for that purpose. Two weeks later she borrowed $26,000 from the Orange National Bank, pledging as collateral therefor the greater part of the same stock, namely, six hundred and eight shares of the Texas company. Through the agency of the

bank, the loan at the brokerage house was immediately paid off and the collateral recovered. Mrs. Winter had had an account at the Orange National Bank for some time.

"The defendants say that they agreed upon the sale of the property before September 1st and that the payment of $20,000 was made on account of the purchase price. Whether this is the fact or whether the transaction of September 1st be regarded as a loan by the wife to her husband, later repaid by the conveyance of the property, is immaterial. A debtor is at liberty to prefer one creditor as against another, even though the preferred creditor be his wife. *Reed* v. *Tilton, 90 N. J. Eq. 42; Carnahan* v. *Carnahan, 92 N. J. Eq. 442; First National Bank* v. *Mooney, 98 N. J. Eq. 137; Uniform Fraudulent Conveyance act* § *3* (*a*).

"Complainant urges that the stock in the Texas company belonged in fact to Mr. Winter and in this manner seeks to establish the voluntary character of the transaction. He produced the records of the Texas company which showed, after giving effect to a split-up of shares, that two hundred and twenty-eight shares of this stock were transferred to Mrs. Winter in 1918. A stock dividend of forty-four shares was issued to her June 18th, 1919. In the fall of that year stockholders were given the right to subscribe to additional shares. Mrs. Winter purchased certain rights and subscribed to them, in addition to the rights of her own shares. November 1st, 1919. The total so subscribed was three hundred and thirty-six shares. The first payment on account of these was January 9th, 1920. When the other payments were made does not appear. The stock was actually issued to her August 4th, 1920. Both Mr. and Mrs. Winter testified that this stock belonged to her. The fact that the certificates stood in her name corroborates their testimony. No proof is introduced to the contrary.

"Whether Mrs. Winter purchased with her own funds her original shares or whether Mr. Winter presented them to her is no consequence, since complainant's assignor was not then a creditor of Mr. Winter, and Mr. Winter was then amply solvent. Mr. Winter was in partnership with his father prior

to January 1st, 1919, when the firm of Winter, Ross & Company was organized. Mr. Winter contributed $250,000 to the firm's capital. 1919 was a profitable year, the firm clearing over $500,000. About September, 1920, trouble started, brought about principally by sharp breaks in the prices of sugar and rubber. The firm, however, did not then become insolvent but remained in business until 1923. Gifts made by Mr. Winter to his wife in 1918 and 1919 cannot successfully be attacked by complainant.

"Complainant urges that the testimony of the defendants be disregarded. Of course they are deeply interested in the controversy, but on the other hand they were both called to testify by the complainant himself. By so doing he impliedly represented that they were worthy of some credit. Their testimony is not in any way contradicted. Neither is there as much corroboration of it as might be desired, but complainant is perhaps responsible in part, since he delayed attacking this conveyance for more than four years after the judgment was obtained in New York.

"I will advise a decree dismissing the bill."

*Mr. John W. Ockford,* for the appellant.

*Messrs. Carrick & Wortendyke,* for the respondents.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Bigelow.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 13.

*For reversal*—None.