PAULINE STERNBERGER

*v.*

BERTHOLD SUSSMAN et al.

[Decided February 28th, 1905.]

1. He who has two funds for the satisfaction of his claim shall not, by electing to resort to the singly-charged fund, disappoint him who has that fund only to resort to.

2. This rule is subject to this, among other qualifications, viz., that both funds must be within the jurisdiction and control of the court, except in the rare cases in which it is clear that the creditor having the two funds will sustain no loss, delay or additional expense, if required to resort, first, to the fund without the jurisdiction.

3. Where there is a paramount mortgage upon land, part of which is conveyed by the mortgagor, equity will throw the burden upon the land that remains where the grantee has paid full value or where the grantor has covenanted against encumbrances. But, the rule being based upon intention, expressed or implied, it will not obtain, in favor of a purchaser, at a sheriff's foreclosure sale.

*Mr. J. Bayard Kirkpatrick,* for the complainant.

*Mr. Frank P. McDermott,* for the defendants.

STEVENS, V. C.

This is a suit to foreclose a mortgage upon an undivided interest in lands in Monmouth county. It is admitted that the mortgage is a valid instrument and a first lien, and that the money secured is due. The only defence is that complainant's mortgage is also a lien upon lands in the city and State of New York, and that, as these lands are apparently an adequate security for the money, the mortgage should be first foreclosed in the courts of New York, and that only in the event of a deficiency there should the first mortgagee be allowed to continue his suit here. This defence is made by a person who was formerly a second mortgagee of the land that is being foreclosed in New

Jersey, but who has himself foreclosed here and became the purchaser at the foreclosure sale.

The principle invoked is that he who has two funds for the satisfaction of his claim shall not, by his election, disappoint him who has only one, and that equity, to satisfy both, will throw him who has the two upon the fund which he alone possesses, so that the other fund may remain clear to him who has but the one. *Aldrich* v. *Cooper, 8 Ves. 382.* This rule is subject to several qualifications, and among them, I think, to the qualification that, except in very special cases, both funds must be within the jurisdiction and control of the court. *Lewis, Trustee,* v. *United States, 92 U. S. 623; Aldrich* v. *Cooper, 2 Lead. Cas. Eq. (3d Am. ed.) 276, Am. note; Ad. Eq. (8th Am. ed.) \*272, note.* There seems to have been some divergence of view on this subject. In the *York and Jersey Steamboat Ferry Co.* v. *Associates of Jersey Co., Hopk. Ch. 522,* it was held by Chancellor Sandford, in New York, that a mortgagee having a lien upon boats in that state and also upon lands in New Jersey would be required, at the instance of a mortgagee of the boats only, to first proceed against the New Jersey land. The case has been questioned, and both on reason and authority it is clear that this course of procedure should be taken only where it is manifest that the creditor having the two funds will not sustain any loss, delay or additional expense by being required to adopt it. A case of this sort would rarely occur in practice. The second mortgagee may be protected by requiring the first mortgagee to place his remedies at the disposition of the second mortgagee after they have served the purpose of satisfying his own debt. *2 Lead. Cas. Eq. (3d Am. ed.) 276.*

In the case in hand it is argued by defendant that there are special circumstances. It is said that the property in New York is an adequate security for the complainant's claim. All that it seems to me that the evidence shows is that it *may* be. The mortgagor appears to have the legal title to an undivided interest in valuable New York property, but what his beneficial interest may be, how far it may be encumbered or available, does not clearly appear. It is evident that the foreclosure of the first mortgage there will necessarily be attended with delay and ex-

pense.   The first mortgagee should not, therefore, be compelled to litigate in New York at his own costs for the benefit of the answering defendant.   Assuming that the facts of this case are such as to present the question, the defendant must fail in his contention.

It is argued further that the second mortgagee, by reason of her purchase at the foreclosure sale, now stands in the position of a purchaser for value.   The principle invoked is that where a mortgagor for valuable consideration conveys away a part of the mortgaged premises, the portion retained is in general primarily liable for the payment of the mortgage debt.   *Mills* v. *Kelley, 62 N. J. Eq.* (*17 Dick.*) *213.*   But this principle has no application to the facts of the case.   The defendant's grantor is not the mortgagor, but the sheriff.   The statute provides that on a foreclosure sale by that officer no greater estate in the premises sold shall at any time be conveyed or granted "than would have been vested in the mortgagee had the equity of redemption been duly foreclosed."   *P. L. 1902 p. 529 § 54.*   Had a strict foreclosure been resorted to, the decree would have adjudged that the mortgagor be divested of his equity of redemption.   That would have been all.   The burden of the prior encumbrance would have remained as before, because there would have been nothing done to vary it.   But precisely the same result has been effected by the foreclosure sale.   The second mortgagee purchased that legal title which he himself had all the time been holding, divested, however, of the equity of redemption.   It is difficult to understand how this act alone could have had the effect of shifting the burden of the first mortgage—of throwing a heavier burden upon the New York land.

But there is another way of looking at it.   It is said in *Mills* v. *Kelley, supra,* that the ground upon which equity throws the burden primarily upon the land that remains, after conveyance of a part, is either that the grantee, having paid full value for what he buys, ought not to pay any more, or that where the consideration is not valuable, the grantor, having covenanted against encumbrances, is bound to make that covenant good.   The rule, says Vice-Chancellor Pitney, in *Gray* v. *Haltersley, 50 N. J. Eq.* (*5 Dick.*) *211,* is based upon the intention of the parties, either

expressed in the writing passing between them or implied from the facts and circumstances of the case.

If it had been shown that a mortgagor had covenanted with a grantee of property in New Jersey that the land was free from encumbrances, and if it had appeared that it was, in fact, encumbered by a mortgage which covered not only land in New Jersey, but also land in New York, then a question would be presented analogous, at least in some respects, to that first discussed. The question would have been whether, because of an act done by the mortgagor subsequently to the making of the first mortgage, the court would have compelled the first mortgagee to exhaust his remedy in New York before allowing him to proceed in New Jersey. But the very foundation for the contention would be the *act* of the mortgagor—the act of an owner able, as between himself and the subsequent purchaser, to throw the burden of the first mortgage where he chose. No one would for a moment imagine that the mere act or intention of the purchaser could shift the burden. No one would assert that the statute gave the sheriff express authority to shift it. If then the burden were shifted, it would be by the inherent force of the conveyance—the mere act of transfer. But, as a matter of conveyancing, it is perfectly possible to convey title to land without changing the burden of prior encumbrances. Indeed, it is said by Vice-Chancellor Emery, in *Jackson* v. *Condict, 57 N. J. Eq.* (*12 Dick.*) *522, 526,* that on a conveyance, "as between different portions of the premises subject to a common charge, the general and fundamental rule of equity is that the burden is to be borne by the different portions ratably;" and that this rule would only be departed from where the intention of the parties was shown to be otherwise. Consequently the burden would, in the absence of evidence to the contrary, remain as it was. And this conclusion is fortified by the statutory direction before quoted, that on a foreclosure sale no greater estate will be conveyed "than would have been vested in the mortgagee had the equity of redemption been duly foreclosed." To regard the legal title of the first mortgagee as, in a measure, modified for the benefit of the purchaser, by the mere act of selling, would seem to be opposed to the spirit and purpose of the enactment.

This result · is perfectly just. The second mortgagee had notice of the first mortgage when she took her own security. She foreclosed and bought in with notice. She does not stand in the position of one who has paid a full price for an unencumbered property. She says in her answer that the sheriff conveyed to her all the rights of the defendants in the foreclosure suit, but she does not say what price she paid. She does not, in her answer, base any right upon her payment. The sheriff's deed states that the consideration was $1,000. The mortgagor's interest in the property is admittedly worth much more than that. If the burden of the mortgage be thrown on the New York land the second mortgagee will get the property for a very inadequate price.

But there is another difficulty with the defendants' case. Originally the mortgages covered the same property, both here and in New York. As matters now stand, the defendant has a second mortgage on property in New York and the complainant a first mortgage on property there and here. The defendant could, with more plausibility, insist, in the New York courts, that the complainant should first exhaust his security here before he foreclosed there than now insist that he must sue there before he can sue here. The defendants' case, in every aspect of it, seems untenable.